FILED
2020 Mar-11 AM 11:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| VERONICA BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 7:19-cv-148-GMB ) |
| ANDREW M. SAUL,[1] Commissioner, Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

On March 14, 2016, Plaintiff Veronica Brown filed applications for disability insurance benefits and supplemental security income. Her alleged disability onset date is January 20, 2016. Brown's applications for benefits were denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on May 10, 2018, and she denied Brown's claims on May 22, 2018. Brown requested a review of the ALJ's decision by the Appeals Council, which declined review on June 10, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of June 10, 2018.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

Brown's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Brown bears the burden of proving that she is disabled, and she is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND

Veronica Brown was 43 years old at the time of the ALJ's decision. R. 52 & 134. She lives in an apartment in Eutaw, Alabama with her three children. R. 56, 178 & 239. Her oldest son is 17 years old, and her two daughters are 15 and 13 years old. R. 56. Her primary complaint is generalized body pain. R. 58. At the hearing before the ALJ, Brown testified that fibromyalgia and sleep apnea are her most severe impairments. R. 60. In her disability report, Brown alleged that back pain, fibromyalgia, arthritis, a torn meniscus, sleep apnea, high blood pressure, and acid reflux prevented her from working. R. 216.

Brown obtained her high school diploma in 1993. R. 217. She has held a variety of employment positions. R. 217. She was an overnight stocker for Kmart.

R. 54. She worked as a parts inspector at ThyssenKrupp, where she inspected dashboards for Mercedes vehicles. R. 56. She also has worked as a cashier and at a dry cleaner in the past. R. 217.

The ALJ held a hearing in Brown's case on May 10, 2018. R. 50. At the hearing, Brown testified that she has generalized pain throughout her body. R. 58. She said that the pain in her back and knees causes her the most significant problems. R. 58. She was diagnosed with fibromyalgia in 2015, but has experienced the pain since 2013. R. 58. Brown reported that her medications decrease the pain. R. 58. Without medication, she scores her pain as a nine on a scale of zero to ten, and with medication her pain is at a level eight. R. 59. Brown testified that she suffers from arthritis in her knees, which causes pain at a level eight. R. 61–62. Her back pain is at a level eight. R. 61. She describes the pain in her knees as a burning sensation. R. 61. Her back pain and leg pain are constant. R. 61–62. Brown also testified that if she does not use her CPAP machine at night, she gets headaches. R. 61. She gets headaches once or twice per week, but they can be relieved with 600 milligrams of ibuprofen. R. 61.

Brown's pain prevents her from walking more than five minutes at a time. R. 64. She testified that she can stand for only ten minutes. R. 64. She can sit in a chair, although she reported that she experiences knee pain even while sitting. R. 64. Also sitting causes her knees to swell, forcing her to elevate her legs to relieve the

6

swelling. R. 69. Brown testified that she cannot lift much more weight than the equivalent of half of a gallon of milk due to the pain in her back. R. 64–65. Brown has muscle spasms in her back every day, and they continue throughout the day. R. 70.

During the hearing, a Vocational Expert ("VE") classified Brown's past work as a laborer, stores, medium and unskilled and as a parts inspector, light and semiskilled. R. 72. The ALJ posed the following hypothetical to the VE:

> Assume for the purposes of these hypotheticals the following non-exertional limitations: no operation of foot controls with the left lower extremity; no climbing ladders/ropes/scaffolds; no kneeling, crouching, or crawling; no excessive vibration, unprotected heights or hazardous machinery. Assume for purposes of the first hypothetical an individual who has the capacity to perform a range of medium work activity as defined by the Dictionary of Occupational Titles.

R. 72. The VE responded that this individual could not work as a laborer but could work as a parts inspector. R. 73. The ALJ clarified that "an individual with the claimant's same vocational profile who has the capacity to perform a range of light work with the same non-exertional limitations" would be able to work as a parts inspector. R. 73. The ALJ inquired whether that individual would be able to work as a parts inspector if she required a sit/stand option for 60 minutes throughout the day. R. 73. The VE determined that this was not possible. R. 73. However, the VE determined that this hypothetical individual could work as a garment sorter and rag inspector. R. 74. Brown's attorney asked the VE whether an individual with the

7

restrictions listed above who also had to lie down for five to six hours throughout the day would be able to find work. R. 74. The VE reported that this hypothetical individual would be ineligible for full-time gainful employment. R. 74.

The ALJ issued her decision on May 22, 2018. R. 28. Under step one of the five-step evaluation process, the ALJ found that Brown has not engaged in substantial gainful activity since January 20, 2016. R. 19. The ALJ concluded that Brown suffers from the following severe impairments: obesity, sleep apnea, gastroesophageal reflux disease, anemia, hypertension with hypertensive nephrosclerosis, fibromyalgia, and degenerative joint disease of the left knee under 20 C.F.R. § 404.1520(c) and § 416.920(c). R. 19–20. The ALJ noted that these medically determinable impairments significantly limit Brown's ability to perform basic work activities. R. 20. But the ALJ concluded at step three of the analysis that none of Brown's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 24.

At step four, the ALJ determined that Brown is able to perform the past relevant work of parts inspector. R. 27. She also determined that Brown has the residual functional capacity ("RFC") to perform light work except that she cannot operate foot controls with her left leg; climb ladders, ropes, or scaffolds; kneel, crouch, or crawl; or work around excessive vibration, unprotected heights, or hazardous machinery. R. 24. Ultimately, the ALJ concluded that Brown was not

disabled within the meaning of the Social Security Act from January 20, 2016 through the date of her decision. R. 28. Based on these findings, the ALJ denied Brown's claims. R. 21.

## IV. DISCUSSION

Brown presents one issue on appeal: whether the ALJ properly evaluated the credibility of her pain allegations consistent with the Eleventh Circuit pain standard. Doc. 11. The court finds that this contention is without merit.

Brown asserts that the ALJ's finding that her pain allegations are inconsistent with the record is not supported by substantial evidence. Doc. 11 at 7. At the hearing, Brown testified that she experiences back pain, knee pain, and generalized body pain. R. 58. She stated that she has had generalized body pain since 2013 and was later diagnosed with fibromyalgia. R. 58. The Social Security Regulations provide that a claimant's subjective complaints of pain cannot alone establish disability. Rather, the regulations describe additional objective evidence that permits a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. When establishing disability in this manner, a claimant must satisfy two parts of the Eleventh Circuit's three-part pain standard: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence

9

confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

"[I]f a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony." *Crow v. Colvin*, 36 F. Supp. 3d 1255, 1259 (N.D. Ala. 2014). A claimant's testimony that is supported by medical evidence and satisfies the pain standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). But an ALJ is free to determine that a claimant's testimony is not credible. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Crow*, 36 F. Supp. 3d at 1259. Thus, after the pain standard is satisfied, the "ALJ must make credibility determinations regarding a claimant's claims of pain" to determine whether the claimant truly is disabled. *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 833 (11th Cir. 2006); *Crow*, 36 F. Supp. 3d at 1259.

When determining the credibility of a claimant's testimony as to her symptoms, the ALJ must follow a two-step process: "(1) first determine if the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and, if so (2) evaluate the intensity and persistence of the claimant's symptoms such as pain and determine the extent to which the claimant's symptoms limit his or her ability to perform work-related activities."

10

*Cooley v. Comm'r of Soc. Sec.*, 2019 WL 211437, at *2 (M.D. Fla. Jan. 16, 2019). "In considering the intensity, persistence, and limiting effects of the claimant's symptoms, the ALJ is to examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *3 (internal citation and quotation omitted). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.2d at 1255. "The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court." *Carrell v. Berryhill*, 2019 WL 1696698, at *4 (N.D. Ala. Apr. 17, 2019). Otherwise, the testimony will be accepted as true. *Id.* The pain standard requires that the articulated reasons be supported by substantial evidence. *Hale*, 831 F.2d at 1012 ("Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence."). In any event, the "question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, implicit in the ALJ's decision is the conclusion that Brown satisfied the pain standard. Brown's severe impairments—including fibromyalgia and

degenerative joint disease—can reasonably be expected to give rise to the claimed back pain, knee pain, and generalized body pain. *See Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1187 (N.D. Ala. 2006) ("Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard."); *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 744 (11th Cir. 2011) ("Although the ALJ did not state explicitly that [degenerative joint disease] could reasonably be expected to produce the pain [the claimant] alleged, this finding is implicit in the ALJ's decision."). The ALJ determined that Brown's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 26. Neither party disputes that the ALJ articulated explicit reasons for discrediting Brown's testimony. The question before the court is whether those reasons are supported by substantial evidence. The court finds that they are.

The ALJ specifically identified several pieces of evidence to support her articulated credibility finding. For example, Brown testified that with medication her pain "comes and . . . goes," and that the medication alleviates her pain. R. 58. On her function report, Brown reported that she can do household cleaning activities as long as she rests periodically. R. 241. She handles her household chores each day

"so [they] don't pile up." R. 242. She does not do yard work because she lives in an apartment. R. 242. Brown is able to leave her apartment almost every day to walk around outside "for a while." R. 242. She can shop for groceries and clothing for her children. R. 242. And although Brown testified at the hearing that she must lie down for five to six hours a day, there is nothing in the record to indicate that she told her medical providers about this limitation.

Brown has been diagnosed with fibromyalgia, and she takes medicines like Gabapentin, Tramadol, and Cymbalta to treat it. R. 58. Around the onset date of disability, Brown was found to have tenderness on her right scapula, right rhomboid muscle, and right knee joint. R. 582. No other tender points were noted,[2] and she did not have tenderness of her lower back, shoulder joints, hips, left knee, or ankles. R. 582. Brown testified that, with medication, her back pain has been at a level eight and has continued at that severity since 2013. R. 63. But the medical evidence indicates that Brown's condition has improved with time. In December 2013, Brown reported that her back pain was severe. R. 780. However, in January 2014, she reported that her pain level was mild and that her condition was improving. R. 786.

---

[2] Tender points are a symptom of fibromyalgia. "The principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Reliford*, 444 F. Supp. 2d at 1186–87.

In October 2017, a physician working at the GHC Physicians Clinic reported that Brown's pain was moderate in severity and a musculoskeletal exam revealed normal findings. R. 757–58. On August 31, 2018, a nurse practitioner from the GCH Physicians Clinic recorded that Brown's fibromyalgia was moderate and that Brown was "doing pretty well overall" despite a complaint of generalized pain. R. 756.

Brown's sleep apnea also improved with treatment. At the hearing before the ALJ, Brown testified that her fibromyalgia causes sleep disturbances. R. 60. She explained that she wakes up with pains throughout her body and with headaches. R. 60–61. But Brown testified that she does not get headaches if she uses her CPAP machine. R. 60. Brown told the ALJ that she sometimes fails to use the CPAP machine because she falls asleep while sitting in a room other than the one where she keeps her CPAP. R. 61. She also reported that she has these headaches once or twice per week, and that the headaches can be relieved with ibuprofen. R. 61–62. She testified that she does not experience any other sleep apnea symptoms. R. 62.

The medical evidence supports the ALJ's finding that Brown's sleep apnea has been controlled with treatment. In March 2016, Dr. James D. Geyer determined that Brown's sleep apnea was best controlled with a CPAP machine. R. 627. In September 2017, Brown visited Alabama Neurology and Sleep Medicine, where she reported that she was wearing the CPAP machine every night and was resting well. R. 696. Brown further reported that she was "benefitting from the [CPAP] system."

R. 696. Brown described her sleep apnea as moderate, and reported that her snoring was resolved with the machine. R. 696.

Although Brown has degenerative disease in her left knee, her medical records show that the symptoms are mild. R. 579. On January 20, 2016, her disability onset date, she had good preservation of her medial and lateral cartilage spaces in both knees. R. 586. The doctor reported that she had joint pain and stiffness, but no loss of mobility, weakness, or muscle cramping. R. 588. She had a good range of motion in her lower extremities and no tenderness on palpation of her left knee. R. 589. A doctor's visit on February 2, 2017 revealed similar findings. R. 579 & 582. Additionally, Brown had a good range of motion without pain in her lower extremities. R. 582. Brown was found to have normal gait in April 2017. R. 709. On October 11, 2017, Brown reported that her knee pain improved with Vitamin D supplements. R. 702. Her gait was normal. R. 704. On August 31, 2017, a nurse practitioner recorded that Brown had no acute abnormalities on her physical exam. R. 756. Injections also improve Brown's knee pain. R. 660. At a doctor's visit in February 2016, Brown reported that steroid injections "did very well for her and she would like to repeat them at this time." R. 661. The treating doctor and physician's assistant decided to schedule Brown for injections every three months. R. 661. On June 1, 2016, a physician's assistant recorded that Brown had received injections in her knees for the past several years with benefit. R. 660.

15

On this record, the court finds that the ALJ properly evaluated Brown's pain allegations consistent with the pain standard. She determined that Brown had underlying medical conditions that could have satisfied the pain standard, but rejected the claimed severity of the symptoms associated with those conditions. The court finds that the ALJ articulated reasons for discounting Brown's pain allegations and that substantial evidence supports the ALJ's reasons for doing so. *See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."). Accordingly, the Commissioner's decision is due to be affirmed.

## V. CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is based upon the proper legal standards and supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE and ORDERED on March 11, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE